IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| VIRGINIA DIEPHEAL WHITAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NASH COUNTY; NASH COUNTY | ) | NO. 5:11-CV-15-FL |
| DEPARTMENT OF SOCIAL | ) | |
| SERVICES; MELVIN BATTS; and | ) | |
| JOSIE GREEN, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| VIRGINIA DIEPHAEL WHITAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 5:11-CV-55-FL |
| v. | ) | |
| | ) | |
| NASH COUNTY; NASH COUNTY | ) | |
| DEPARTMENT OF SOCIAL | ) | |
| SERVICES; MELVIN BATTS; and | ) | |
| JOSIE GREEN, | ) | |
| | ) | |
| Defendants. | ) | |

This consolidated matter comes before the court on defendants' motion for summary judgment, lodged originally in the first case captioned above at docket entry number 21, and in the second at docket entry number 20. Plaintiff responded in opposition, and defendants replied. Accordingly, the issues raised are ripe for adjudication. For reasons set forth below, defendants' motion for summary judgment is GRANTED.

## STATEMENT OF THE CASE

Virginia Diepheal Whitaker ("plaintiff") initially filed complaint in the Superior Court Division of the General Court of Justice of Wake County, North Carolina, asserting claims against Nash County, Nash County Department of Social Services, Melvia Batts (Director), and Josie Green (Food and Nutrition Supervisor) (collectively, "defendants") under Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. § 2000e-1 *et seq.* Plaintiff alleged discrimination on the basis of race, retaliation, and harassment. In addition, plaintiff complained of libel. Defendants removed the action to this court on February 7, 2011, and the clerk assigned case number 5:11-cv-55-FL.

On January 12, 2011, plaintiff filed complaint directly with this court, initiating a new civil action with case number 5:11-cv-15-FL. The two complaints are nearly identical, with only one apparent difference. Plaintiff alleges religious discrimination in case number 5:11-cv-15-FL but not in 5:11-cv-55-FL. Absent this exception, the complaints share the same claims. Further, they name the same defendants. Accordingly, by order signed December 29, 2011, the court granted plaintiff's motion to consolidate the two cases. The parties were informed that all future filings should be filed in civil action No. 5:11-cv-15-FL.

Defendants filed the instant motion for summary judgment on October 14, 2011. Plaintiff responded in opposition on November 7, 2011, and defendants replied on November 21, 2011.

## STATEMENT OF THE FACTS

In September 2005, plaintiff, an African-American female, began employment with the Nash County Department of Social Services ("NCDSS") as an Income Maintenance Caseworker II in the Adult Medicaid Unit. Plaintiff had the following supervisors during her time with NCDSS. Laura O'Neal ("O'Neal") was the Director of Social Services at NCDSS from approximately June 2004

through January 2009, and she made the decision to hire plaintiff. In February 2009, Melvia Batts ("Batts") replaced O'Neal as Director of Social Services. Batts had previously served as Deputy Director of Social Services from 2003 to February 2009. As of approximately June 2009, Paula Person ("Person") held the position of Income Maintenance Administrator and supervised Josie Green ("Green"), Food and Nutrition Supervisor, who was in turn plaintiff's immediate supervisor.

Other individuals referenced in the parties' filings are Sheila Freeman ("Freeman"), Nash County Human Resources Director; Linda Shearon ("Shearon"), the Adult Medicaid Supervisor; Donna Boone ("Boone"), Deputy Director of NCDSS as of approximately 2009; and Anison Kirkland, Human Resources Specialist for Nash County.

A.     Plaintiff's Charges of Discrimination

In or around March 2006, plaintiff complained of racial discrimination to O'Neal, then Director of Social Services at NCDSS. Plaintiff claimed that she was the only African-American employee in the Adult Medicaid Unit and had an average of fifty (50) more cases assigned to her than her white coworkers. O'Neal investigated plaintiff's complaint and found that two of plaintiff's four white coworkers had been assigned more cases than plaintiff, and two had been assigned less. O'Neal made changes to the case load in effort to effectuate more even distribution.

On July 19, 2006, plaintiff sent a letter to Dureatta Gibson ("Gibson"), then Income Maintenance Administrator for NCDSS, in which she complained of a hostile work environment and requested transfer from the Adult Medicaid Unit. In response, O'Neal held a meeting on July 21, 2006 with plaintiff; Gibson; Shearon, plaintiff's immediate supervisor; and Batts, then Deputy Director of NCDSS. O'Neal asked plaintiff to provide a basis for her allegation of a hostile environment. Plaintiff again mentioned that her case load had been higher than other workers', and

she complained of the manner in which she learned that she had not been selected for a position to which she applied: Long Term Income Maintenance Caseworker II.

In a letter memorializing the meeting, dated July 24, 2006, O'Neal summarized her response to plaintiff as follows:

> After reviewing your concerns carefully I have determined that the most qualified applicant was selected for the Long Term Care Income Maintenance Caseworker II, that I have not been able to determine that your being a sole minority in your unit has resulted in any negative consequences and, in fact, your supervisor had, of her own volition, determined that the caseloads were out of balance and proceeded to adjust those. Further, I see no basis for your claims that you were in a hostile environment.

O'Neal Aff. Ex. A, at 2. Further, O'Neal informed plaintiff that there were no vacancies open for transfer in other units.

On September 21, 2007, plaintiff sent O'Neal a letter which she identified as her "official notice of resignation . . . effective October 31, 2007." O'Neal Aff. Ex C. Less than a week later, in letter received by O'Neal on September 26, 2007, plaintiff informed O'Neal that she would like to withdraw her resignation. O'Neal Aff. Ex. D. Although NCDSS did not allow plaintiff to withdraw her resignation, they did rehire her to the position of Income Maintenance Caseworker II in the Food and Nutrition Unit, effective November 1, 2007. Plaintiff did not experience any break in employment.

On August 15, 2008, plaintiff sent a letter to Sheila Freeman ("Freeman"), Nash County Personnel Director. Plaintiff informed Freeman that the letter was her "second official complaint of discrimination and [of] being forced to work in a hostile working environment due to open discrimination against me." O'Neal Aff. Ex. E. Plaintiff sent follow-up letters on September 22, 2008 and September 30, 2008, stating in the latter that she had "been constantly harassed and denied promotion due to retaliation after filing formal complaints of discrimination and having to work in

4

a hostile environment." Id.

O'Neal received a copy of plaintiff's August 15, 2008 letter and held a meeting with plaintiff and Batts on August 20, 2008 to discuss plaintiff's allegations of discrimination. O'Neal requested written specifics from plaintiff to support her allegations, and plaintiff responded that she would attempt to provide writing by August 25, 2008. In letter dated October 8, 2008, O'Neal memorialized her efforts to obtain from plaintiff specific information to support plaintiff's discrimination charge. O'Neal concludes:

> I have asked you for specific information regarding your allegations and have been unable to investigate those allegations because you failed to provide the information. In addition, I believe that I have given you more than ample time to provide information for my consideration. Having no further information to consider regarding your allegations I consider this matter closed.

O'Neal Aff. Ex. E, at 2.[1]

On August 25, 2009, plaintiff e-mailed Person, then Program Administrator for NCDSS, and complained that Green, plaintiff's Food & Nutrition Supervisor, had given her an unfair employee evaluation. Plaintiff concluded her e-mail to Person as follows: "I pray that this [harassment] and unfair treatment will cease and that I will be allowed to work in a non-hostile environment with fair treatment with equal opportunity for promotion." Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. L, at 50. Plaintiff also notified Green of her desire to appeal her performance evaluation. Id. at 51.

B.    Plaintiff's Failures to Obtain Promotion

On or about June 3, 2009, Batts, Director of NCDSS, interviewed plaintiff for the position

---

[1] O'Neal also informed plaintiff that she could initiate any of the following options: "1) Nash County DSS appeals procedure; 2) proceed directly to the State Personnel Commission for a hearing by the Office of Administrative Hearings; or 3) file a complaint with the Equal Employment Opportunity Commission." Id.

of Income Maintenance Program Administrator.[2] Batts gave the position to the only other qualified applicant, Paula Person, an African-American female, who Batts states was more experienced. Batts Aff. ¶ 23.

Plaintiff also applied in 2009 for the position of Deputy Director of NCDSS. Ultimately, Donna Boone, a white female, was hired. Batts states that Boone was selected because she had "27 years of experience with Nash County DSS, with 16 of those being in management . . . and a higher educational degree." Id. ¶ 25.

C.    Performance Evaluations

Plaintiff never received a disciplinary write-up or disciplinary action, and all of her performance ratings were at the "meets expectations/achieves standards" level. However, plaintiff refused to sign several of her employee reviews. For instance, plaintiff would not sign an evaluation dated August 13, 2008, though it notes consistently that plaintiff "meets expectations" in categories ranging from "knowledge of job" to "cooperation" to "safety and housekeeping." Nor would plaintiff sign her evaluation dated August 25, 2009. Therein, plaintiff was found to "achieve performance standards," and her strengths were summarized as follows: "Virginia has grasped the Food and Nutrition Services Program quite well. She gets along well [with] co-workers and clients. She works hard to ensure deadlines are met." Batts Aff. Ex. I, at 31. The evaluation also includes a summary of "areas for improvement:"

> Virginia needs to work on her organizational skills. She needs to continue to keep all filing current. She needs to continue to keep all 8590's in appropriate files. She needs to continue to act on changes in a timely manner. She needs to continue to

---

[2]  Plaintiff refers to this position as "Income Maintenance Program Administrator." See Pl.'s Mem. in Opposition to Defs.' Mot. to Consolidate, 4-5 ("On June 3, 2009[,] the plaintiff interviewed for a position of Income Maintenance Program Administrator."). Defendants in turn title the position, "Income Maintenance Worker." See Batts Aff. ¶ 23.

document files to reflect her calculations & verification.  She needs to continue to review manual sections to help clarify how to apply policy.  When questions arise[ ] and if still unsure come to supervisor or lead worker for clarification with policy section.

Id.  Plaintiff, in subsequent letter to Freeman, Director of Nash County Human Resources, takes issue with the above statements that she needs to work on organizational skills, improve documentation, and keep all 8590 forms in appropriate files.

Plaintiff did sign a performance review dated March 13, 2009.  In the space for employee comments, she wrote:

> (1) For what judgment ye judge, ye shall be judged, and with what measure ye mete, it shall be measured to you again.  Matthew 7:2.  (2) This is the stone which was set at nought of you builders, which is become the head of the corner.  Acts 4:11. (3) When the wicked, even mines [sic] enemies and my foes came upon me to eat up my flesh they stumbled and fell.  PSALM 27:2.
> Batts Aff. Ex. I, at 43.

Id. (citations as written in original).

On December 29, 2009, plaintiff completed an application for a client in which there was an error keyed relative to the application date, resulting in an over-issuance of benefits in the amount of $60.00.  Batts, in letter to plaintiff dated January 12, 2010, states that the error was discovered by plaintiff's supervisor, Green.  Plaintiff, in memo dated December 30, 2009, acknowledges accidentally keying the wrong code but asserts that *she* discovered the error and reported it to her supervisor.

On or about January 5, 2010, Green informed plaintiff that she needed to complete and sign FORM DSS-1682, a "state required form that every employee must complete when an overpayment or underpayment is issued."  Batts Aff. ¶ 13.  Plaintiff refused to complete or sign the form.  Subsequently, Green met with plaintiff and Person, Income Maintenance Program Administrator.

7

At several points during the meeting, plaintiff excused herself. Person "explained to [plaintiff] that the Form 1682 had to be completed whenever there was an over or underpayment because errors can be caused by employee mistakes or a customer misrepresentation. In the latter instance, the customer might have to be turned over to Program Integrity." Person Aff. ¶ 5. Plaintiff ultimately signed the form but wrote on it that she signed "under duress." Batts Aff. ¶ 5.

D.    Plaintiff's Termination

On January 5, 2010, plaintiff sent a memo to Green, again complaining of a hostile work environment. The next day, Green and Person met with plaintiff to address her allegation. As the meeting progressed, plaintiff complained of a heart condition and mental health trouble. Plaintiff missed the next two days of work in order to recover.

Upon her return to work, on January 11, 2010, plaintiff met in the morning with Person and Batts to discuss plaintiff's allegations of hostility and harassment. Plaintiff informed Batts that she was uncomfortable discussing the issue with Person present, where plaintiff felt that Person was one of the individuals who had harassed her. Accordingly, a meeting was rescheduled for the afternoon, with Batts, plaintiff, and Deputy Director Donna Boone in attendance. Batts again asked plaintiff to provide specific details about the alleged harassment, and plaintiff responded: "I was yelled at initially by Paula [Person] on the 6th of January. Josie Green was yelling and saying I'm ordering you to sign this report now. I didn't understand why I had to fill out the form. On January 6 Josie hit my door real hard and pushed it at the same time." Batts Aff. Ex. A, at 2. Batts informed plaintiff that there was a vacancy in the Adult Medicaid Unit, at which point plaintiff became unsteady and said she would like to go home. Plaintiff's husband was called, and she went home.

The next day, Batts notified plaintiff that she was being placed on investigatory leave with

pay.  Plaintiff was directed to obtain information from her medical providers as to the severity of her health conditions and to provide a written statement to Batts by January 26, 2010.  Plaintiff provided completed Family Medical Leave forms on January 26, 2010.  Batts, upon review of the forms, determined that plaintiff's illness met the criteria for Family Medical Leave.  Batts informed plaintiff that her leave would be initiated effective January 6, 2010 and further notified plaintiff "that upon returning to work, [she] must present a fitness-for-duty certification."  Batts Aff. Ex. B, at 2.

By letter dated March 9, 2010, Batts informed plaintiff that her Family Medical Leave would terminate effective 5:00 p.m. on April 1, 2010.  Batts further stated: "Prior to your returning to work, it will be necessary for you to bring a fitness for duty certification.  Please obtain a written statement from your treating health care provider prior to or upon your return to work."  Batts Aff. Ex. D, at 1.

Plaintiff responded to Batts by fax dated March 30, 2010.  Batts Aff. Ex. C.  She informed that her doctor would not complete the Job Performance Fitness Certification, and she requested an extension of her Family Medical Leave.  Id.  Also on March 30, 2010, plaintiff provided Batts with a March 25, 2010 letter from one of her medical providers, Dr. Jenny Smith, stating: "Ms. Whitaker was seen in my office on 3/23/10.  She is continuing to have symptoms which would be predicted to interfere with her performance at work.  Therefore, she is unable to return to work."  Batts Aff. Ex. H.

On April 5, 2010, Batts reviewed plaintiff's request for extended medical leave.  Batts Aff. ¶ 39.  Batts determined that plaintiff's position in the Food and Nutrition Services Unit was critical.  Id.  By letter dated April 5, 2010, Batts denied plaintiff's request for an extension of leave.  Id. ¶ 40.  However, Batts allowed plaintiff opportunity to provide an alternate proposal by April 12, 2010.

Id. Plaintiff did not respond, and in a letter dated April 14, 2010, Batts informed plaintiff that she would be terminated due to unavailability for work. Id. ¶ 41.

E.      Plaintiff's EEOC Filings

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") dated January 29, 2010, with Charge No. 433-2010-00819. Where prompted to check the appropriate box(es) signaling the bases for her discrimination charge, plaintiff checked only "retaliation," leaving unchecked, *inter alia*, boxes for "race," "color," and "religion." Plaintiff detailed the particulars of her charge as follows:

> I.      On or about March 2006, I filed a complaint with the Respondent because I was the victim of Racial Discrimination. I filed that complaint because I was the only Black [employee] in my Unit and I had an average of 50 more cases assigned to me [than] [were] assigned to my non Black coworkers. In the complaint[,] I also addressed the issue that I had been denied a promotion to Income Maintenance Caseworker III, and that a White coworker that was less qualified than I was selected for the position.
>
> II.     Ever since I filed that complaint with the Respondent, I have been the victim of harassment and retaliation. [Whenever] a position is being readied to be posted, I'm given a write-up and/or an unfair evaluation which in turn prevents me from being promoted. Most recently[,] I was denied promotions in July 2009 to Program Administrator, September 2009 to Social Worker II, and in October 2009 to Deputy Director.
>
> III.    I believe that I have been the victim of retaliation, in Violation of Title VII of the Civil [Rights Act] of 1964, as amended, ever since I filed a complaint of Racial Discrimination with the Respondent in 2006.

Defs.' Mot. for Summ. J., Ex. F. Plaintiff submitted an amendment to this charge, signed June 7, 2010. On October 14, 2010, the EEOC issued plaintiff a right-to-sue notice, which notice plaintiff attached to her complaints.

Plaintiff alleges in her complaints that she filed a second charge with the EEOC on or about

April 2010. No party has presented this charge to the court. However, plaintiff attached to her opposition to defendants' motion for summary judgment a right-to-sue notice issued by the EEOC on October 26, 2011.[3] See Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. E. Also attached are several pages from an EEOC Notice of Determination, which suggest that plaintiff's second charge was filed April 21, 2010.

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but to determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying

---

[3] This right-to-sue notice was issued after plaintiff initiated both case number 5:11-cv-55-FL (where complaint was filed on or about January 5, 2011) and case number 5:11-cv-15-FL (where complaint was filed on or about January 12, 2011).

facts in the light most favorable to the nonmoving party. <u>United States v. Diebold</u>, Inc., 369 U.S. 654, 655 (1962). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. <u>Anderson</u>, 477 U.S. at 247-48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion. <u>Id.</u> at 248-49.

"A document filed *pro se* is to be liberally construed." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Hill v. Braxton</u>, 277 F.3d 701, 707 (4th Cir. 2002). <u>See</u> <u>also</u> <u>Wojcicki v. Aiken Technical Coll.</u>, 360 F. App'x 484, 487 (4th Cir. 2010) (a *pro se* Title VII litigant is entitled to have his pleadings read liberally). Liberal construction is particularly appropriate when a *pro se* complaint raises civil rights issues. <u>Brown v. N. Carolina Dept. of Corr.</u>, 612 F.3d 720, 722 (4th Cir. 2010). However, "[w]hile *pro se* complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them' . . . The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transformer the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." <u>Weller v. Dep't of Soc. Services for City of Baltimore</u>, 901 F.2d 387, 391 (4th Cir. 1990) (quoting <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)).

B.      Plaintiff's Title VII Claims

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] religion," 42 U.S.C. § 2000e-2(a)(1), or to discriminate against any employee "because [she] has opposed any practice made an unlawful employment practice by [Title

12

VII], or because [she] has made a charge . . . under [Title VII]," id. § 2000e-3(a). Where, as here,

a plaintiff lacks direct evidence of discrimination, she may rely on the burden-shifting framework

set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4]

Satisfaction of the McDonnell Douglas test is a three-step process. First, plaintiff must put

forward sufficient evidence to

> establish[] a prima facie case of discrimination [or retaliation] . . . . If a prima facie
> case is presented, the burden shifts to the employer to articulate a legitimate . . .
> reason for the adverse employment action . . . . Assuming the employer meets this
> burden of production, . . . the burden shifts back to plaintiff to prove by a
> preponderance of the evidence that the employer's stated reasons . . . were a pretext
> for discrimination [or retaliation].

Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc); see also

EEOC. v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005).

1.      Individual Defendants

In addition to Nash County and NCDSS, plaintiff names Melvia Batts and Josie Green as

defendants. Plaintiff does not clarify whether these persons are joined in their official or individual

capacities. To the extent that plaintiff alleges Title VII claims against defendants Batts and Green

in their individual capacities, such claims are dismissed, where "supervisors are not liable in their

individual capacities for Title VII violations." Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-81

(4th Cir. 1998). Further, where plaintiff also has named NCDSS as a defendant, any claims against

Batts and Green in their official capacities would be redundant. See, e.g., Wright v. Town of

Zebulon, 4:06-CV-218-BO, 2008 WL 6838583 (E.D.N.C. Feb. 25, 2008) aff'd, 310 F. App'x 609

---

[4] See Lettieri v. Equant Inc., 478 F.3d 640, 649-50 (4th Cir. 2007) (applying McDonnell Douglas framework to a Title
VII retaliation claim); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (applying McDonnell Douglas framework to a Title
VII race discrimination claim); Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011)
(applying McDonnell Douglas framework to a Title VII religious discrimination claim).

(4th Cir. 2009) ("the law clearly states that official capacity claims as against both employees and governmental entities are redundant, and that such claims as against employees should be dismissed"). Accordingly, summary judgment is GRANTED in favor of Batts and Green to the extent plaintiff asserts Title VII claims against them.

Defendants maintain that plaintiff's Title VII claims against defendant Nash County must also be dismissed. They argue, "[b]ecause only Nash County Department of Social Services was Plaintiff's employer, the claims against all other Defendants, including Nash County, fail as a matter of law." Defs.' Mem. 19. Defendants have not provided any authority or factual support for this contention.

Title VII makes it unlawful for an "employer" to discriminate or retaliate against an employee. 42 U.S.C. §§ 2000e-2, 2000e-3. An "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . ." Id. § 2000e(b).[5] The Fourth Circuit has discussed the term "employer" as used in the civil rights statutes as follows:

> Although a direct employment relationship provides the usual basis for liability under the civil rights statutes, the ambiguity of the term employer in the civil rights statutes has driven courts to fashion a variety of tests by which a defendant that does not directly employ the plaintiff may still be considered an employer under those statutes . . . Under the "integrated employer" test, several companies may be considered so interrelated that they constitute a single employer . . . In determining whether to treat corporate entities as an "integrated employer," according to the DOL regulations, the factors we should consider include: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control . . . However, no single factor is

---

[5] "The term 'person' includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers." 42 U.S.C. § 2000e(a).

conclusive.

Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999) (internal citations omitted).

Here, the court does not have enough information to determine the composition of the employment relationship between Nash County, NCDSS, and plaintiff. See Graves v. Lowery, 117 F.3d 723, 729 (3d Cir. 1997) ("the precise contours of an employment relationship can only be established by a careful factual inquiry") (citing Magnuson v. Peak Tech. Servs., Inc., 808 F. Supp. 500, 510 (E.D. Va. 1992), aff'd, 40 F.3d 1244 (4th Cir. 1994)). Where plaintiff in complaint alleges that she was employed by Nash County, a material issue of fact remains as to whether Nash County was plaintiff's "employer" as contemplated by Title VII. Accordingly, Nash County has failed to persuade the court that it was not plaintiff's "employer." In the following discussion as to Title VII liability, the court's phrase "Nash County defendants" refers to both Nash County and NCDSS.

2.      Retaliation

To demonstrate a *prima facie* case of retaliation under Title VII, plaintiff must show "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). "[P]laintiff has the initial burden to prove her *prima facie* case by a preponderance of the evidence, which she may do by 'proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment was the product of discrimination [or retaliation]." Burgess v. Bowen, 466 F. App'x 272, 276 (4th Cir. 2012) (quoting Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)). A plaintiff meets the second element of the *prima facie* test if "a reasonable employee would have found the challenged action materially adverse," meaning that it

"might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). "[V]ery little evidence of a causal connection is required to establish a prima facie case," Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998), abrogated on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), and the third element of the test may be satisfied merely by close temporal proximity between the protected activity and the adverse employment action. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

Plaintiff satisfies the first prong of the above test – demonstration of engagement in a protected activity – where the record supports that she complained of discrimination in March 2006, August 2008, August 2009, and January 2010. As to the second prong, plaintiff proffers three ostensible types of adverse employment action: (1) negative performance evaluations; (2) denials of promotion; and (3) termination. Each is considered below, and where the court finds that plaintiff has alleged adverse employment action, it proceeds further with the McDonnell Douglas analysis.

a.      "Negative" Performance Evaluations

Plaintiff first contends that several of her performance evaluations constituted adverse employment action. However, there is no indication that plaintiff ever received a negative evaluation. Her performance was consistently determined to "meet expectations" and was never adjudged "below expectations." The Fourth Circuit has found no adverse employment action when an employee's performance score, though diminished from earlier evaluations, remained within a "fully acceptable" rating. Thompson v. Potomac Electric Power Co., 312 F.3d 645, 652 (4th Cir. 2002). See also Spears v. Missouri Dept. of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000) ("A poor performance rating does not itself constitute an adverse employment action because it has

no tangible effect upon the recipient's employment . . . [and] is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms of conditions of the recipient's employment."). Here, plaintiff has not provided evidence that her performance evaluations had any tangible effect upon her employment. Indeed, the evaluations appear positive and at worst average. The court therefore finds that these evaluations would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination," Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68, and they therefore do not constitute adverse employment action.

    b.  Failure to Promote

    Plaintiff asserts that Nash County defendants retaliated by failing to promote her on several occasions. Denial of promotion constitutes adverse employment action. Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011). Accordingly, if plaintiff demonstrates that she applied for a promotion, was denied promotion, and the denial occurred in close temporal proximity to one of her complaints of discrimination, she has set forth a *prima facie* case of unlawful retaliation. Pursuant to the McDonnell Douglas test, the burden then shifts to defendants to articulate a legitimate reason for refusing to promote plaintiff. Hill, 354 F.3d at 285. If defendants demonstrate a legitimate reason, the burden shifts back to plaintiff to show by a preponderance of the evidence that defendants' stated reasons were a pretext for retaliation. Id.

    Plaintiff has not provided much detail about the positions for which she applied, when she was interviewed, who interviewed her, or who was instead selected for each position. Indeed, plaintiff does not reference any particular position in her complaints; she merely alleges that since filing her first complaint of discrimination in March 2006 she has been "denied promotion." In her first EEOC charge, dated January 29, 2010, plaintiff stated that she had been denied promotions in

"July 2009 to Program Administrator, September 2009 to Social Worker II, and in October 2009 to Deputy Director." The court, applying liberal construction to *pro se* plaintiff's filings, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), assumes these are the denied promotions of which plaintiff complains.

Plaintiff states that she was denied promotion to the Income Maintenance Program Administrator position in July 2009 (which position defendants identify as "Income Maintenance Worker"). Melvia Batts, as Social Services Director of NCDSS, interviewed plaintiff for this position on or about June 3, 2009. Batts Aff. ¶ 23. Batts selected the only other qualified applicant for the position, Paula Person, because plaintiff "had less experience than Paula Person and no meaningful supervisory experience." <u>Id.</u> Plaintiff has not presented any evidence to rebut defendants' justification for instead promoting Person. Indeed, plaintiff attaches to her response to defendants' motion for summary judgment a memo authored by Batts, dated June 4, 2009, in which Batts states:

> We interviewed the two fully qualified applicants, assessing experience, education, performance evaluations and the interviews. Applicants had comparable education, evaluations, and interviews. We selected the candidate with the most Income Maintenance and Supervisory experience. Ms. Paula Person had 17 years in supervision with another company and she had 12 years, 9 months in Income Maintenance, with three of those being as Lead Worker.

Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. L., at 88.

Thus, even assuming *arguendo* that plaintiff has shown a causal link between her complaints of discrimination and her failure to obtain promotion to the Income Maintenance Program Administrator position, and has thereby established a *prima facie* case of retaliation, she cannot satisfy the <u>McDonnell Douglas</u> test. Defendants have articulated a legitimate reason for the decision to promote Person instead of plaintiff: Person had more experience. Plaintiff has not proved by a

preponderance of the evidence that the employer's stated reasons were a pretext for retaliation. Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). Plaintiff's claim of retaliation as to her failure to obtain promotion to this position therefore fails.

The same is true of plaintiff's failure to obtain promotion to the position of Deputy Director in 2009. Defendant Batts states as follows in affidavit:

> [Plaintiff] applied to be the Deputy Director in 2009. Donna Boone was selected. Donna Boone had 27 years of experience with Nash County DSS, with 16 of those years being in management. Thus, Donna Boone had greater overall experience, a higher educational degree, as well as many years of management. [Plaintiff] was not a qualified applicant for the position.

Batts Aff. ¶ 25. Where plaintiff has not presented any evidence to rebut NCDSS's legitimate reason for hiring Boone, plaintiff's claim of retaliation as to her failure to obtain promotion to the position of Deputy Director similarly fails. Holland, 487 F.3d at 418.

Finally, plaintiff complained in her EEOC charge that she was denied promotion in September 2009 to the position of Social Worker II. The court, having scoured the record, has found little evidence regarding this position. Plaintiff attaches to her response to defendant's motion for summary judgment an e-mail from Sarah Hill, NCDSS Adult Services Supervisor. In this e-mail, Ms. Hill forwarded a document entitled, "Social Worker II–Intake Job Description." The e-mail, however, is dated October 20, 2009, a month after plaintiff claims she was denied promotion to the Social Worker II position.

Defendants, in their motion for summary judgment and affidavits in support, also fail to provide any information on the Social Worker II position for which plaintiff allegedly was denied promotion in September 2009. Instead, defendants reference a Social Worker II position for which plaintiff apparently was denied promotion in July or August 2006. Defendants assert that a more

experienced applicant, Leslie Jones, was selected. But plaintiff, in response to defendant's motion for summary judgment, again asserts that defendants' failure to promote her to the Social Worker II position occurred in 2009, not 2006. See Pl.'s Resp. to Defs.' Mot. for Summ. J. 5 (the "position of Social Worker II . . . was given to Leslie Jones in 2009, not 2006[,] as Melvia Batts stated in her affidavit"). Though defendants replied to plaintiff's response, they did not address this discrepancy.

Plaintiff has the burden, however, of first demonstrating a *prima facie* case by a preponderance of the evidence, "which she may do by proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of [retaliation]." Burgess, 466 F. App'x at 276. See also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination"). Plaintiff has failed to provide sufficient evidence that would enable the fact-finder to evaluate her allegation that she was denied promotion in September 2009 to a position titled "Social Worker II," despite opportunity to conduct full discovery. Plaintiff has not provided description of the position, its requisite qualifications, or who ultimately was hired. Nor has plaintiff even proffered evidence that she applied. Plaintiff has not met her initial burden of establishing her *prima facie* case of Nash County defendants' retaliatory failure to promote her in September 2009 to the position of Social Worker II. Accordingly, Nash County defendants' motion for summary judgment as to this claim is GRANTED.

c.      Termination

Finally, plaintiff asserts that the Nash County defendants retaliated against her by terminating her employment.  Here, plaintiff satisfies the three elements of a *prima facie* case of retaliation.  Coleman, 626 F.3d at 190.  First, she engaged in protected activity each time she lodged a complaint of discrimination.  Second, she suffered adverse employment action in the form of termination.  Third, the short period of time between her filing of an EEOC charge in January 2010 and her termination in April establishes a causal connection between her protected activity and her adverse employment action.  Nonetheless, although plaintiff has stated a *prima facie* case, her retaliation claim fails because the Nash County defendants have offered a legitimate, nondiscriminatory reason for the termination, and plaintiff has not put forward sufficient evidence to show that this explanation is merely pretextual.  See Holland, 487 F.3d at 218.

Pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, an eligible employee is entitled to a total of twelve workweeks of leave during any twelve month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  The regulations make clear that an eligible employee's FMLA leave entitlement is *limited* to a total of 12 workweeks of leave during any 12-month period.  See 29 C.F.R. § 825.200(a).  Further, the employer may require an employee on FMLA leave to submit a fitness-for-duty certification before returning to work:

> As a condition of restoring an employee whose FMLA leave was occasioned by the employee's own serious health condition that made the employee unable to perform the employee's job, an employer may have a uniformly-applied policy or practice that requires all similarly-situated employees (i.e., same occupation, same serious health condition) who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work. The employee has the same obligations to participate and cooperate (including providing a complete and sufficient certification or providing sufficient

21

authorization to the health care provider to provide the information directly to the employer) in the fitness-for-duty certification process as in the initial certification process.

29 C.F.R. § 825.312. The employee may be terminated for failure to provide a fitness-for-duty certification at the expiration of her FMLA leave. 29 C.F.R. § 825.313(d); Howard v. Inova Health Care Servs., 302 F. App'x 166, 176-77 (4th Cir. Dec. 5, 2008).

Batts, following review of plaintiff's FMLA forms submitted January 26, 2010, determined that plaintiff had a serious health condition entitling her to a period of leave, initiated effective January 6, 2010. Batts Aff. Ex. B, at 1. Batts informed plaintiff that "upon returning to work, [she] must present a fitness-for-duty certification." Id. at 2. By letter dated March 9, 2010, Batts notified plaintiff that her FMLA leave would terminate effective 5:00 p.m. on April 1, 2010. Batts Aff. Ex. D. She reminded: "Prior to your returning to work, it will be necessary for you to bring a fitness for duty certification." Id. Plaintiff responded on March 30, 2010. She informed that her doctor would not complete the fitness certification. Batts Aff. Ex. C. In addition, one of plaintiff's physicians, Dr. Jenny Smith, signed a letter dated March 25, 2010, in which she informed that plaintiff was "continuing to have symptoms which would be predicted to interfere with her performance at work, therefore she is unable to return to work." Batts Aff. ¶ 38.

On April 5, 2010, Batts mailed a letter to plaintiff, notifying plaintiff that her FMLA leave, annual leave, and sick leave had been exhausted. Batts. Aff. Ex. G, at 1. She further informed that it had become increasingly difficult to manage plaintiff's assignments in her absence. Id. Therefore, Batts did not deem it in the interest of NCDSS to approve any additional leave without pay. Id. at 1-2. Batts concluded:

> As a result of your medical provider's statement that you are unable to return to work and the consequences for the unit as addressed above, I am considering separating

22

you from employment due to unavailability for work. I have not, however, made a final decision in this regard. I am providing you an opportunity to offer an alternate proposal or reasonable accommodation in writing to me no later than Monday, April 12, 2010. If you do not respond within the specified timeframe, I will make a decision based upon available information at that time. Please understand that my decision to consider separating you from employment is not a disciplinary action but rather separate due to unavailability after all leave has been exhausted.

Id. at 2. Batts did not receive a response from plaintiff. Batts Aff. Ex. H. Accordingly, on April 14, 2010, Batts mailed plaintiff a letter of termination. Id.

Based on the foregoing, the court finds that the Nash County defendants have offered a legitimate, nondiscriminatory reason for plaintiff's termination. Plaintiff was given twelve weeks FMLA leave, and her return was conditioned on receipt of a fitness-for-duty certification, as provided by the regulations. When NCDSS did not receive such certification from plaintiff in the time provided, NCDSS allowed plaintiff additional time to respond. Plaintiff did not reply. Accordingly, where plaintiff did not provide the required fitness-for-duty certification, and plaintiff's position was instrumental to NCDSS and consequently to the public, the Nash County defendants had a legitimate reason for terminating plaintiff. The burden therefore shifts back to plaintiff to prove by a preponderance of the evidence that the Nash County defendants' stated reasons for terminating plaintiff were a pretext for retaliation. Hill, 354 F.3d at 285. Plaintiff has not met this burden, and her claim for retaliatory termination therefore fails.

    2.    Discrimination on the Basis of Race

Plaintiff's *pro se* complaint, liberally construed, alleges termination and failure to promote based on racial discrimination. Although defendants do not in motion for summary judgment direct any portion of their argument to plaintiff's claims of racial discrimination, defendants assert that they are entitled to summary judgment as to *all* Title VII claims. See Defs.' Mot. for Summ. J. ¶

23

1.  Accordingly, the court analyzes below whether, with respect to plaintiff's claims of discrimination on the basis of race, there is genuine dispute as to any material fact, and whether the Nash County defendants are entitled to judgment as a matter of law.

a.      Discriminatory Failure to Promote

To demonstrate a *prima facie* case of discrimination for failure to promote, plaintiff must show that "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for the position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). The fourth element, "an inference of unlawful discrimination," is satisfied where a position is filled by an applicant outside plaintiff's protected group. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994).

Here, as discussed above, plaintiff asserts that she was unlawfully denied promotion in July 2009 to Income Maintenance Program Administrator, in October 2009 to Deputy Director, and in September 2009 to Social Worker II. Accordingly, each of theses denied promotions is considered below.

Paula Person, an African-American female, was promoted to the Income Maintenance Program Administrator position instead of plaintiff. Where Ms. Person is a member of the same protected group as plaintiff, this circumstance does not give rise to an inference of unlawful discrimination. Further, as discussed *supra*, Nash County defendants have articulated a legitimate, nondiscriminatory reason for promoting Ms. Person to the Income Maintenance Program Administrator position rather than plaintiff (Person had more experience), and plaintiff has failed to show by a preponderance of the evidence that this reason was a pretext for discrimination.

24

Accordingly, Nash County defendants are entitled to summary judgment as to plaintiff's claim that they discriminated against her on the basis of her race when they failed to promote her in July 2009 to the position of Income Maintenance Program Administrator.

Donna Boone, who was hired as Deputy Director instead of plaintiff, is white and therefore not a member of the same protected group as plaintiff. However, assuming *arguendo* that plaintiff has established a *prima facie* case of discrimination for Nash County defendants' failure to promote her to the position of Deputy Director, defendants have met their burden of articulating a legitimate, nondiscriminatory reason for promoting Boone instead of plaintiff. As discussed above, Boone was more experienced. Where plaintiff has failed to show by a preponderance of the evidence that the Nash County defendants' stated reasons for instead promoting Boone were a pretext for discrimination, defendants are entitled to summary judgment on plaintiff's discriminatory failure to promote claim as to the Deputy Director position.

Finally, as the court found in its analysis of plaintiff's claim that the Nash County defendants retaliated against her by failing to promote her in September 2009 to the position of Social Worker II, plaintiff has not met her initial burden of establishing a *prima facie* case that Nash County defendants failed to promote her to the Social Worker II position because of her race. Burdine, 450 U.S. at 253.

Based on the foregoing, to the extent plaintiff alleges discriminatory failures to promote, Nash County defendants' motion for summary judgment as to these claims is GRANTED.

        b.     Discriminatory Termination

To establish a *prima facie* case of wrongful termination under Title VII, plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3)

she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. Hill, 354 F.3d at 285. Here, plaintiff cannot satisfy the third element. She was unfit for work at the time of her termination and had been for three previous months. Furthermore, plaintiff has not provided any information that would enable the court to evaluate the fourth element, namely whether the position from which she was terminated was subsequently filled, or who filled it. Finally, as discussed above, even if plaintiff were able to establish a *prima facie* case of discriminatory termination, Nash County defendants have met their burden of articulating a legitimate reason for terminating plaintiff (plaintiff was unable to obtain from her physician a fitness-for-duty certification). Where plaintiff has not shown by a preponderance of the evidence that Nash County defendants' stated reason for terminating plaintiff was a pretext for discrimination, defendants are entitled to summary judgment as to plaintiff's claim of discriminatory termination.

       3.       Hostile Work Environment

Plaintiff alleges in her complaints that she was harassed at work. Construing her complaints liberally, Erickson, 551 U.S. at 94, the court finds that plaintiff asserts here that Nash County defendants created a hostile work environment. Though defendants did not address this claim directly in their motion for summary judgment, they moved for summary judgment as to all of plaintiff's Title VII claims. Accordingly, the court analyzes below whether Nash County defendants are entitled to summary judgment on plaintiff's hostile work environment claim.

To establish a *prima facie* case for a hostile work environment claim under Title VII, plaintiff bears the burden to show that the alleged conduct (1) was unwelcome; (2) resulted because

of her race or prior protected activity; (3) was sufficiently severe or pervasive to alter the conditions

of her employment; and (4) was imputable to her employer.  Pueschel v. Peters, 577 F.3d 558, 564-

65 (4th Cir. 2009).  "While the first element is subjective, the rest of the test is made up of objective

components based on a 'reasonable person' standard."  Id. at 565.  In order to prove the second

element, plaintiff must show that "but for" her race or prior protected activity, she would not have

been the victim of the discrimination.  Id.  As for the third element, plaintiff must show that the

environment was both subjectively and objectively hostile or abusive.  Kennedy v. St. Joseph's

Ministries, Inc., 657 F.3d 189, 198 (4th Cir. 2011).  "To satisfy the objective component, the

harassing conduct must be so extreme as to amount to a change in the terms and conditions of

employment."  Id. (internal quotation marks omitted).  Harassment is considered sufficiently severe

or pervasive to alter the terms of conditions of the employment if a workplace is "permeated with

discriminatory intimidation, ridicule, and insult."  Pueschel, 577 F.3d at 565 (quoting Harris v.

Forklift Sys., Inc., 510 U.S. 17, 21 (1986)).

Plaintiff has not directed the court to the particular conduct she found harassing, and no

evidence exists in the record to establish a *prima facie* case of Nash County defendants' creation of

a hostile work environment because of plaintiff's race or in retaliation for her complaints of

discrimination.[6]  Accordingly, to the extent plaintiff alleges a hostile work environment in violation

---

[6] In a letter to plaintiff dated January 12, 2010, Melvia Batts memorializes her meeting with plaintiff and Donna Boone, held January 11, 2010, during which plaintiff complained that Josie Green "hit [plaintiff's] door real hard" and that Green and Paula Person yelled at her about completing Form 1682.  Batts Aff. Ex. A.  Green, in affidavit, states, "I always knock before entering the offices of my employees.  I do not know why knocking on Virginia Whitaker's door bothered her on one particular day."  Green Aff. ¶ 2.  Person, in turn, states that plaintiff "did say that she felt that Mrs. Green was harassing her.  I asked her for details so I could consider her allegations, but she simply referred back to the meeting regarding Form 1682 which I had attended."  Person Aff. ¶ 5.  However, considering these events in the light most favorable to plaintiff, they do not support a hostile work environment claim.  Plaintiff has not provided any evidence to suggest that Green knocked hard on her door, or that Person and Green yelled at her, because of her race or because of a prior protected activity.  Further, the conduct described – a supervisor yelling at an employee on one occasion or knocking hard on her door – is not sufficiently severe or pervasive to alter the conditions of employment.

of Title VII, Nash County defendants' motion for summary judgment is GRANTED.

       4.      Discrimination on the Basis of Religion

Plaintiff, in her complaint filed in case number 5:11-cv-15-FL, additionally alleges that the Nash County defendants discriminated against her on the basis of her religion. Plaintiff does not provide in her complaint any factual support for this allegation, but she amplifies her claim of religious discrimination in her opposition to defendant's motion to consolidate cases. There, plaintiff states that defendants (1) prohibited plaintiff from praying on numerous occasions and (2) questioned plaintiff about certain scripture she had written in the comments section of her employee evaluation.

Plaintiff's claim of religious discrimination must be dismissed, however, because plaintiff failed to allege religious discrimination in her EEOC charge. Before bringing a discrimination claim under Title VII, a plaintiff must first file a discrimination charge with the EEOC. See, e.g., Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). "The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). "[O]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Servs. Co., 80 F.3d 954, 963 (4th Cir. 1996). A plaintiff's failure to exhaust administrative remedies in an EEOC action deprives the court of subject matter jurisdiction over the claim. Id.

The Fourth Circuit takes a narrow approach to determining if claims are "reasonably related"

---

Pueschel, 577 F.3d at 564.

to or "developed by reasonable investigation of" the original complaint. <u>Evans</u>, 80 F.3d at 963. If the EEOC charge alleges discrimination on one basis, such as race, and the federal action alleges discrimination on a different basis, such as sex, the separate federal claim will generally be barred. <u>Jones</u>, 551 F.3d at 300. The Fourth Circuit has held that a plaintiff may not expand an adverse employment action beyond the allegations stated in the original EEOC charge. <u>Chako v. Patuxent Institution</u>, 429 F.3d 505, 509 (4th Cir. 2005).

The EEOC issued plaintiff a right-to-sue letter on October 14, 2010, arising from plaintiff's EEOC Charge No. 433-2010-00819. In the corresponding charge, signed January 29, 2010, plaintiff checked only the box for discrimination based on "retaliation," leaving all other boxes unchecked, including those for "race" and "religion." In the space on the form allowing for amplification of the charge, plaintiff does clearly reference discrimination on the basis of her race. But she does not complain at all of discrimination based on her religion. Nor does plaintiff mention religious discrimination in her amended charge, signed June 7, 2010.

Where plaintiff did not allege discrimination based on religion in her EEOC Charge No. 433-2010-00819, out of which charge plaintiff's right-to-sue letter attached to her complaints arose, she has failed to exhaust her administrative remedies with regard to her claim of religious discrimination. The court therefore lacks subject matter jurisdiction to address it. Nash County defendants' motion for summary judgment as to this claim is therefore GRANTED.

C.    Plaintiff's Libel Claim

Plaintiff, in section four of her *pro se* complaints, asserts a cause of action for "libel." Libel is written defamation. <u>Mkt. Am., Inc. v. Christman-Orth</u>, 135 N.C. App. 143, 149, 520 S.E.2d 570, 576 (1999). "In order to recover for [libelous] defamation, a plaintiff must allege and prove that the

defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." Pierce v. Atl. Group, Inc., 724 S.E.2d 568, 578 (N.C. Ct. App. 2012) (quoting Tyson v. L'Eggs Products, Inc., 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987)).  North Carolina courts recognize three classes of libel:

> (1) Publications which are obviously defamatory and which are termed libels *per se;* (2) publications which are susceptible of two reasonable interpretations, one of which is defamatory and the other is not, and (3) publications which are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances. This type of libel is termed libel *per quod.*

Pierce v. Atl. Group, Inc., 724 S.E.2d 568, 578 (N.C. Ct. App. 2012) (quoting Tyson, 84 N.C. App. at 11, 351 S.E.2d at 840 (quotation omitted)).  "Defamatory words, to be libelous *per se*[,] must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." Tyson, 84 N.C. App. at 12, 351 S.E.2d at 840.

Despite the liberal construction afforded *pro se* plaintiff's documents, Erickson, 551 U.S. at 94, plaintiff has failed to "affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact" as to whether any of the defendants committed libel. Matsushita Elec. Indus. Co. Ltd., 475 U.S. at 586-87.  The court has reviewed plaintiff's complaints, her opposition to defendants' motion to consolidate, and her opposition to defendants' motion for summary judgment.  Plaintiff states in her opposition to defendants' motion for summary judgment that her "negative" employment evaluations were fabricated.  Where defendants deny committing libel, plaintiff has the burden to "affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact" as to whether any of the statements in her employee evaluations were libelous. Matsushita Elec. Indus. Co. Ltd., 475 U.S. at 586-87.  Here, plaintiff has not

30

identified a particular statement in any evaluation that she believes to be false, nor has she indicated

to whom any statements were published. Plaintiff's vague assertion in her response to defendants'

motion for summary judgment that "all negative documentation [in her evaluations] was highly

fabricated," Pl.'s Resp. to Defs.' Mot. for Summ. J. 3, does not support a claim against defendants

for libel.[7] Accordingly, defendants' motion for summary judgment as to plaintiff's claim of libel

is GRANTED.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 21 in the first

case captioned above and DE # 20 in the second) is GRANTED. The clerk of court is DIRECTED

to close this case.

---

[7] Plaintiff attaches several performance reviews to her response to defendants' motion for summary judgment, which reviews are dated August 25, 2009, March 11, 2009, August 13, 2008, and April 19, 2006. The comments therein generally are positive (*e.g.*, "Virginia shows courtesy and respect to co-workers;" "Virginia gets along well with her clients;" "Virginia has progressed in the Food and Nutrition Services Program quite well. She has done quite well in grasping the Program. She requires very little supervision regarding her knowledge of the program."). The evaluations do contain constructive criticism. For instance, in a section entitled "Supervisor Summary: Areas for Improvement," plaintiff's evaluator writes: "Virginia needs to work on her organizational skills." Pl.'s Mem., Ex. L at 46. Courts have held that an employer's evaluations of an employee's abilities or performance constitute opinions and are not actionable under a defamation claim. See Mangan v. Corporate Synergies Group, Inc., 834 F. Supp. 2d 199, 201 (D.N.J. 2011) (collecting cases); Baldwin v. Univ. of Texas, 945 F. Supp. 1022, 1035 (S.D. Tex. 1996); Campanelli v. Regents of Univ. of California, 44 Cal. App. 4th 572, 581, 51 Cal. Rptr. 2d 891 (1996) ("Furthermore, an employer's evaluation of his employee's performance contains an inherent degree of subjectivity, and courts should be extremely cautious before allowing such comments to become the basis of a libel action."); Doe v. White Plains Hosp. Med. Ctr. (WPHMC), 10 CIV. 5405 GBD, 2011 WL 2899174 (S.D.N.Y. July 8, 2011) aff'd sub nom. Doe v. French, 458 F. App'x 21 (2d Cir. 2012). Further, North Carolina courts hold that pure expressions of opinion cannot be defamatory. See, e.g., Craven v. Cope, 188 N.C. App. 814, 817, 656 S.E.2d 729, 732 (2008) ("If a statement cannot reasonably be interpreted as stating actual facts about an individual, it cannot be the subject of a defamation suit. Rhetorical hyperbole and expressions of opinion not asserting provable facts are protected speech."). Thus, even if plaintiff had identified the particular statements in her employee evaluations that she believed fabricated and defamatory, such statements likely would be protected as expressions of opinion, not assertions of fact. Furthermore, had plaintiff identified the allegedly libelous statements, plaintiff's evaluators likely could assert qualified privilege. Long v. Vertical Technologies, Inc., 113 N.C. App. 598, 601-02, 439 S.E.2d 797, 800 (1994) (statements made by plaintiffs' employers during staff meeting regarding plaintiffs' termination were protected by qualified privilege).

SO ORDERED, this the 5th day of September, 2012.


_____
LOUISE W. FLANAGAN
United States District Judge